# Vinson&Elkins

Ephraim (Fry) Wernick  ewernick@velaw.com
**Tel +**1.202.639.6730  **Fax +**1.202.879.8830

October 26, 2022

**Via ECF and Email (Failla_NYSDChambers@nysd.uscourts.gov)**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:**   *Consumer Financial Protection Bureau and New York Attorney General v. MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.*, 22-cv-03256-KPF

Dear Judge Failla:

Defendants write to inform the Court of a recent decision of the U.S. Court of Appeals for the Fifth Circuit, holding that the statutory funding structure of the Consumer Financial Protection Bureau ("CFPB" or "Bureau") violates the Appropriations Clause and that this structural constitutional infirmity mandates vacatur of regulations promulgated through the expenditure of unconstitutional funds. *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, No. 21-50826, 2022 WL 11054082 (5th Cir. Oct. 19, 2022) (attached as Exhibit A). This decision directly supports certain arguments in Defendants' pending motion to dismiss and reply (ECF 31, 38). Given the significance of this decision for that motion and the potential ramifications the decision has on this action as a whole, Defendants respectfully submit this Court could benefit from additional briefing on the issue and request leave for the parties to submit targeted supplemental briefing on the topic. Defendants respectfully request this Court allow Defendants to file a supplemental brief not to exceed 10 pages, with Plaintiffs being afforded the opportunity to file a supplemental response not to exceed 10 pages and Defendants being afforded the opportunity to file a reply not to exceed five pages. Plaintiffs have indicated they will respond after this letter motion is filed.

In *Community Financial Services*, a three-judge panel of the Fifth Circuit unanimously held that the CFPB's statutory funding structure violates the Appropriations Clause and the separation of powers principles embodied therein.[1] *See* 2022 WL 11054082, at *12–18. On that basis, the court vacated the challenged agency action (there, the Bureau's 2017 Payday Lending Rule). *Id.* at *18. Discussing Constitutional text, history, tradition, and precedent, the Fifth Circuit reasoned that the Appropriations Clause "does more than reinforce Congress's power over fiscal matters; it affirmatively obligates

---

[1] With this opinion, seven judges on the Fifth Circuit have now considered the CFPB's unique funding structure and each found it to be unconstitutional. *See CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 221-22 (5th Cir. 2022) (Jones, J., concurring).

**Vinson & Elkins LLP   Attorneys at Law**
Austin  Dallas  Dubai  Houston  London  Los Angeles  New York
Richmond  Riyadh  San Francisco  Tokyo  Washington

2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037-1701
**Tel** +1.202.639.6500  **Fax** +1.202.639.6604  velaw.com



Congress to use that authority 'to maintain the boundaries between the branches and preserve individual liberty from the encroachments of executive power.'" *Id.* at *13 (citation omitted). The Fifth Circuit focused on the "straightforward and explicit command" of the Appropriations Clause itself, *id.* at *13 (quoting *OPM v. Richmond*, 496 U.S. 414, 424 (1990)), which provides that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by law," *id.* at *16 (quoting U.S. CONST. art I, § 9, cl. 7). Through that plain language, the Fifth Circuit explained, "the Framers carefully separate[d] the purse from the sword by assigning to Congress and Congress alone the power of the purse." *Id.* at *12 (internal quotations omitted). That separation of powers serves not only to check the "overgrown prerogatives" of other branches, but ensures "transparency and accountability to the people." *Id.*

In the Fifth Circuit's view, the Bureau's "self-actualizing, perpetual funding mechanism" fell far short of what the Appropriations Clause demands. *Id.* at *14. Because the Bureau, by statute, obtains its annual funding by "simply requisition[ing]" its chosen amount (within certain limits) directly from the Federal Reserve, "which [funding of the Federal Reserve] is itself outside the appropriations process," Congress retained neither direct nor indirect control over the Bureau. *Id.* (quoting *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2194 (2020)). This "double-insulated" funding structure—"unprecedented across the [federal] government," *id.* at *14—"renders the Bureau 'no longer dependent and, as a result, no longer accountable' to Congress and, ultimately, to the people," *id.* at *15. The constitutional defect is all the "more acute because of the Bureau's capacious portfolio of authority," which includes "creating substantive rules for a wide swath of industries, [and] prosecuting violations." *Id.*

In so holding, the Fifth Circuit rejected the Bureau's contrary arguments, echoed in the Bureau's briefing in this case. The mere fact that the Bureau's funding scheme was enacted by Congress, the Fifth Circuit explained, cannot satisfy the Appropriations Clause's requirement of an actual "appropriation," as distinct from enabling legislation. *Id.* at *16; *see also id.* ("tak[ing] Congress at its word" that the Bureau's funds "shall not be construed to be ... appropriated monies," 12 U.S.C. § 5497(c)(2)). *See* Opp'n to Mot. to Dismiss, ECF No. 37, at 4-5. Nor did it suffice to cite the truism that Congress can alter the Bureau's funding scheme via legislation. 2022 WL 11054082, at *16; *cf.* ECF No. 37, at 5. The Fifth Circuit observed that other courts' rejections of the funding concerns were based largely on the mistaken belief that other agencies relied on similar self-funding. *Id.* at *17; *cf.* ECF No. 37, at 5.

The proper remedy for this constitutional violation was to "rew[i]nd the unlawful action" by "vacat[ing]" the agency action "as the product of the Bureau's unconstitutional funding scheme." *Id.* at *18. Adopting the framework of *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Fifth Circuit reasoned that "the funding employed by the Bureau to promulgate the Payday Lending Rule was wholly drawn through the agency's unconstitutional funding scheme" and "there is a linear nexus between the infirm provision (the Bureau's funding mechanism) and the challenged action (promulgation of the rule)." *Id.* The Bureau's "unconstitutional funding structure not only 'affected the complained-of decision,' it literally *effected* the promulgation of the rule." *Id.* (quoting *Collins*, 141 S. Ct. at 1801 (Kagan, J., concurring in part)).



The Fifth Circuit's decision bears directly on several issues presented in Defendants' pending motion to dismiss. *First*, the decision confirms Defendants' argument that the CFPB's statutory funding structure violates the Appropriations Clause, and that the appropriate remedy must grant Defendants meaningful relief here, resulting in the dismissal of an enforcement action brought by an unconstitutionally structured regulator. The Fifth Circuit's decision analyzes at length the Constitution's text, structure, history, and relevant case law, and Defendants respectfully submit that this Court could benefit from more fulsome and targeted briefing on the subject and the Fifth Circuit's analysis.

*Second*, the rationale that "the Bureau's improper use of unappropriated funds to engage in the [challenged conduct]" applies with equal force here; it is "fairly apparent" (2022 WL 11054082, at *18 and n.17) that the Bureau has used non-appropriated funds to adopt the Remittance Rule underlying the Bureau's allegations and is using non-appropriated funds to pursue this enforcement proceeding—no less than it used such funds in promulgating the Payday Lending Rule at issue in *Community Financial Services*. In short, the Fifth Circuit's conclusions and rationale precludes any enforcement of the Remittance Rule because the Rule itself is invalid, *see Sai Kwan Wong v. Doar*, 571 F.3d 247, 262-63 & n.15 (2d. Cir. 2009) (party may timely raise substantive challenge to validity of regulation in defense of enforcement action) and the Bureau may not expend further resources in an enforcement proceeding. *See All Am. Check Cashing*, 33 F.4th at 242 (Jones, J., concurring) ("a government actor cannot exercise even its lawful authority using money the actor cannot lawfully spend").

*Third*, given that the Remittance Rule is void and unenforceable under *Community Financial Services*, the First Amended Complaint's near-exclusive reliance on alleged violations of that Rule takes on particular significance. This Court would benefit from more detailed briefing on the practical and legal consequences of the Remittance Rule's invalidity combined with the CFPB's structural infirmities—not just for claims asserted by the CFPB (Counts I-VI), but also for counts where New York seeks to enforce against, directly or indirectly, alleged violations of the invalid Remittance Rule (Counts V-VII).

These points are of central importance to this action's viability and Defendants respectfully submit that targeted supplemental briefing will ensure effective presentation on these critical issues.

Respectfully Submitted,

 */s/ Ephraim Wernick*
Ephraim (Fry) Wernick
Tel: (202) 639-6730
Email: ewernick@velaw.com
*Attorney for Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.*