**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Consumer Financial Protection Bureau and the People of the State of New York by Letitia James, Attorney General for the State of New York,

Plaintiffs,

v.

MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.,

Defendants.

Case No. 22-cv-3256 (KPF)

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE AND MOTION TO DISMISS**

Plaintiffs file this sur-reply to address three discrete points in MoneyGram's reply submission: a new statute of limitations argument; MoneyGram's inaccurate claim that Plaintiffs have conceded MoneyGram's assertions; and new facts in paragraphs 4 and 5 of a supplemental declaration. This Court should disregard or reject these points, and MoneyGram's associated arguments.

## I. This Court should not consider MoneyGram's new theory of contemporaneous, constructive discovery, but if it does, it should reject the theory as wrong.

The Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5564(g)(1), states that "no action may be brought under [the CFPA] more than 3 years after the date of discovery of the violation." MoneyGram's opening memorandum asserted that Plaintiffs' First Amended Complaint (FAC or Complaint) shows discovery of the relevant violations "between 2014 and 2016" and "no later than 2016." ECF No. 31 (Defs.' Br.) 32, 33. On reply, MoneyGram offered a new argument: that after 2016, either the Bureau or both Plaintiffs "constructively" discovered violations "contemporaneously" or "nearly contemporaneously" with the occurrence of the violations. ECF No. 38 (Defs.' Reply) 15, 16. Thus, MoneyGram now suggests, each instance of such contemporaneous-constructive discovery began the running of the section 5564(g)(1) limitations period, for both Plaintiffs. On this new basis, MoneyGram contends that under section 5564(g)(1), neither Plaintiff can pursue violations that occurred prior to September 20, 2018. Defs.' Reply 13 n.17.

This Court should deny MoneyGram's motion to dismiss without considering this contemporaneous-constructive discovery theory because MoneyGram raised the argument for the first time on reply. *See Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-CV-7436 (LJL), 2022 WL 3100562, at *6 n.6 (S.D.N.Y. Aug. 3, 2022). MoneyGram's opening memorandum did not argue that the Complaint contained allegations of specific discovery dates

for any violations after 2016. *See* Defs.' Br. 32-33 (proposing multiple alternative interpretations of the term "discovery" but not arguing for any post-2016 date of discovery in the Complaint, under any interpretation).

Alternatively, the Court should reject this argument on the merits. As a threshold matter, "discovery of the violation" under the CFPA does not mean "constructive" discovery. *See* ECF No. 35 (Pls.' Opp'n) 18-19. But even if this Court were to conclude otherwise, MoneyGram's new contemporaneous-constructive discovery theory would fail, for several reasons.

First, MoneyGram's contemporaneous-constructive discovery argument contradicts the plain meaning and intent of section 5564(g)(1). By adopting a limitations period that is triggered by "discovery" of a violation, Congress authorized a limitations period that can start running *after* the violation occurred, compared to a standard limitations rule, under which the period would start when the violation occurred. *See generally St. Louis v. Perlitz*, 176 F. Supp. 3d 97, 98-99 (D. Conn. 2016). MoneyGram's theory erases this distinction by producing a cut-off date identical to what would apply without a discovery rule.[1]

If this theory is applied, it would severely narrow the ability of states and the Bureau to use the extended limitations period Congress expressly provided. Here, MoneyGram bases its theory on the Complaint's allegation that the Bureau (not New York) previously examined MoneyGram and communicated to MoneyGram about some *earlier* violations, FAC ¶¶ 34-35; Defs.' Reply 15, 16. Applied to suits against other entities, MoneyGram's theory would create an enormous, unwritten exception to 12 U.S.C. § 5564(g)(1), effectively reading the term "discovery" out of the statute for any entity for which the Bureau (or any state) has issued a

[1] MoneyGram's proposed 2018 cut-off date is what MoneyGram calculates as three years before filing, adjusted by a tolling period. *See* Defs.' Br. 32 & n.23.

communication about or otherwise addressed past violations. This approach would render a statutory term ("discovery") insignificant, which courts must avoid, *Duncan v. Walker,* 533 U.S. 167, 174 (2001), and contradict the principle that statutes of limitation should be construed in the government's favor, *Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984).

Second, the Complaint does not contain facts to establish that either Plaintiff had contemporaneous, constructive discovery of any MoneyGram violation. Constructive discovery of a violation occurs no earlier than the date when "a reasonably diligent plaintiff would have discovered" the facts establishing such violation, *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). The panoply of facts necessary to establish such a date, for each violation at issue, is enormous. This case involves two plaintiffs, alleging a variety and multitude of violations, involving the actions of a geographically-dispersed organization. *See* FAC ¶¶ 22-30, 49-104. And here, the Complaint includes *nothing* from which the Court could conclude that either the Bureau or New York, with reasonable diligence, should have discovered all of the relevant facts for all of MoneyGram's violations "contemporaneously" or "nearly contemporaneously" after 2016. For instance, the Complaint's allegations do not establish that either plaintiff, acting with reasonable diligence, would have had real-time access to *any*, let alone all, relevant information. *Cf. Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 95 (2d Cir. 2018) (rejecting constructive discovery argument, as it was "too soon to identify… the precise moment at which" the plaintiff would have had sufficient information to plead the violations and thus when the limitations period began to run); *Diesenhouse*, 2022 WL 3100562, at *6 (concluding, even with regard to one single fact, that the complaint did not establish that a reasonable plaintiff "would have necessarily" discovered that fact "as soon as it occurred").

MoneyGram suggests that a "reasonably diligent plaintiff" in the Bureau's shoes would be close to omniscient, simply because it is a government agency and because of its earlier examinations of MoneyGram. MoneyGram cites *Gabelli v. SEC*, 568 U.S. 442 (2013) for support, but the Supreme Court in *Gabelli* did not hold that reasonably diligent agencies have a duty to investigate every company at every moment or that they discover violations in real-time. Rather, *Gabelli* recognized that, though an agency had a mission to root out legal violations, 568 U.S. at 451, "[d]etermining when the Government, as opposed to an individual … reasonably should have known of a [violation] presents particular challenges for the courts," *id.* at 452.

The Complaint's allegations about the Bureau's pre-2016 exams and related communication, FAC ¶¶ 34-35, also do not support MoneyGram's theory. Those allegations cannot show that the Bureau should have discovered violations that had not yet happened. Similarly, they do not establish that the Bureau, with reasonable diligence, would later investigate *other* violations or show how long such investigations would take before the Bureau discovered all violations. *Cf. Schwab*, 883 F.3d at 95 ("mere fact" of other investigation does not prove plaintiff had "information necessary to set forth its claims" on a similar topic).[2]

Third, even if correct, MoneyGram's contemporaneous-constructive discovery theory would not cut-off New York's claims. MoneyGram's argument is based on examinations and communication by the Bureau, not any allegations in the Complaint about New York.

Fourth, MoneyGram equivocates on whether it believes the Bureau discovered violations contemporaneously with their occurrence—or only "nearly" so, Defs.' Reply 15, 16. "Nearly" is

[2] To the extent MoneyGram makes assertions, or references materials, that go beyond the face of the Complaint, those cannot be considered now, Pls.' Opp'n 3, and in any case would not change this conclusion.

not precise enough to support a specific trigger for the limitations period or a partial dismissal of claims on the pleadings.

Fifth, even with its new (and erroneous) contentions regarding post-2016 violations, MoneyGram does not show that the Complaint establishes that either the Bureau or New York "constructively discovered" all of MoneyGram's pre-2016 violations by 2016 (or any other particular date). *See* Pls.' Opp'n 16-17.

## II. Plaintiffs do not concede MoneyGram's narrative about pre-filing events.

MoneyGram asserts that Plaintiffs "essentially concede the facts demonstrating that forum shopping is afoot" by not responding to MoneyGram's allegations. Defs.' Reply 2 & n.2. This assertion is incorrect. The Opposition clearly states: "The Bureau does not endorse MoneyGram's account of events. But because that history is not relevant, the Bureau does not submit declarations on these points." Pls.' Opp'n 23 n.15. Further, though MoneyGram's briefs present a narrative about what MoneyGram believes motivated the Bureau and New York to be co-plaintiffs, it is based on speculation and conjecture. For this reason too, MoneyGram's story requires no fact response. This does not mean that Plaintiffs agree with or "concede" any facts.

## III. This Court should not consider paragraphs 4 and 5 in MoneyGram's supplemental declaration, but if it does, witness convenience still weighs against transfer.

Witness convenience "is generally the most important factor in the transfer analysis." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 350 (E.D.N.Y. 2012). However, as Plaintiffs earlier explained, MoneyGram's opening submission did not satisfy even its threshold burden on this factor. Pls.' Opp'n 32-33. It did not "clearly specify the key witnesses to be called and … make a general statement of what their testimony will cover," *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014). Without such a showing, to enable the Court to consider the materiality, nature, and quality of each witness, plus

clear and convincing evidence that convenience favors the Northern District of Texas, MoneyGram cannot overcome the strong presumption that Plaintiffs' choice of forum should not be disturbed. Pls.' Opp'n 27-28, 32-33; *Liberty*, 17 F. Supp. 3d at 396.

On reply, MoneyGram uses paragraphs 4 and 5 of a supplemental declaration, ECF No. 38-1, to list titles of eight positions and state that a subset could speak to factual issues. The Court should disregard those paragraphs as they are an untimely attempt by MoneyGram to satisfy its burden. To consider the paragraphs would "inappropriately allow [MoneyGram] a second bite at the … apple." *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 513 F. Supp. 2d 18, 20 (S.D.N.Y. 2007) (movant "may not add new materials simply because [opponent] pointed out that [movant] has not met its burden"). A sur-reply does not "cure[] any error." *Id.*

But even if considered, paragraphs 4 and 5 do not satisfy MoneyGram's threshold burden. These paragraphs, which are heavily qualified, do not purport to list all potential MoneyGram witnesses (or even all key ones) and each one's testimony. In fact, they do not identify *any* particular person as a potential witness. Paragraph 4 only lists titles in the organization, not names. Then, paragraph 5 states that only "certain" of those title-holders could speak to relevant facts—without identifying which of the listed positions could speak, on which topics, and whether MoneyGram actually intends any particular one to testify.[3] *Cf. EasyWeb*, 888 F. Supp. 2d at 351 (list of individuals and entities who are sources of information is not equivalent to witness list). Moreover, both the list of positions and the list of topics are notably incomplete. Paragraph 4 states that the listed title-holders are "among" those most knowledgeable. It does not account for other knowledgeable individuals (inside or outside

[3] Plaintiffs presume that paragraph 5's reference to paragraph 2 is a mistake, intended to refer to paragraph 4.

MoneyGram). Indeed, the list includes only current employees and does not address who MoneyGram would call to testify to facts pre-dating those individuals' knowledge or the actions of MoneyGram agents. To the extent it identifies relevant topics at all, paragraph 5 ignores the actual handling of remittance transfers that is central to Plaintiffs' claims, *i.e.*, whether MoneyGram *actually* provided required disclosures, made funds timely available, properly addressed errors, or retained documents. *See* FAC ¶¶ 49-55, 58, 60; Pls.' Opp. 31-32.

Still, the "witness-convenience" factor weighs against transfer even if the Court credits the eight title-holders as potential witnesses. Paragraphs 4 and 5 do not show that the Northern District of Texas would be more convenient for witnesses, *on the whole*, than this district because they do not show how many witnesses MoneyGram expects that it will call, and on what topics, or where those individuals live and work. *See EasyWeb*, 888 F. Supp. 2d at 351-52. Moreover, even with those paragraphs, MoneyGram has not shown that this district is inconvenient to *any* of its potential witnesses.[4] Finally, because Plaintiffs' potential witnesses include New York-based witnesses, transfer would, at most, shift inconvenience from one set of witnesses to another. That cannot justify transfer. *Data Device Corp. v. W.G. Holt, Inc.*, No. 19-CV-4105(JS)(ARL), 2020 WL 7024312, at *8 (E.D.N.Y. Nov. 30, 2020); Pls. Opp'n 33-34.

## CONCLUSION

For the foregoing reasons, and those explained in Plaintiffs' previously filed opposition, this Court should deny MoneyGram's motion to dismiss Plaintiffs' First Amended Complaint and motion to transfer venue.

[4] In attempting to connect paragraph 4 title-holders to Dallas, MoneyGram uses an "either … or" formulation that does not state that each one lives *and* works outside *this* district (or states nearby). ECF No. 38-1 ¶ 4. Further, for such senior employees at a global company, whose inconvenience weighs less than that of non-employees, travel may very well be routine, and could be compelled by MoneyGram. *See* Pls.' Opp'n 33-34 & n.22.

Dated October 27, 2022

LETITIA JAMES
Attorney General
of the State of New York

JANE M. AZIA (NY 1539600)
*Bureau Chief*
*Bureau of Consumer Frauds and Protection*

**/s/ Jason L. Meizlish***
JASON L. MEIZLISH (NY 4935029)
*Assistant Attorney General*
*Bureau of Consumer Frauds and Protection*
28 Liberty Street
New York, NY 10005
Email: Jane.Azia@ag.ny.gov
Email: Jason.Meizlish@ag.ny.gov
Telephone: 212-416-8727 (Azia)
Telephone: 212-416-8455 (Meizlish)

Attorneys for Plaintiff
State of New York

*Mr. Meizlish, on behalf of the State of New York, consents to the signing and filing of this document.

Respectfully submitted,

ERIC HALPERIN
Enforcement Director

RICHA SHYAM DASGUPTA
Deputy Enforcement Director

JAMES T. SUGARMAN
Assistant Deputy Enforcement Director

**/s/ Rebecca Smullin**
REBECCA SMULLIN
DC Bar No. 1017451 (admitted pro hac vice)
Enforcement Attorney
Email: rebecca.smullin@cfpb.gov
Telephone: 202-435-7546

ERIN MARY KELLY
DC Bar No. 479413 (admitted pro hac vice)
Enforcement Attorney
Email: erin.kelly@cfpb.gov
Telephone: 202-435-7367

SAMUEL TAXY
IL Bar No. 6333449 (admitted pro hac vice)
Enforcement Attorney
Email: samuel.taxy@cfpb.gov
Telephone: 202-435-7551

1700 G Street NW
Washington, DC 20552

Attorneys for Plaintiff
Consumer Financial Protection Bureau