# Vinson&Elkins

Ephraim (Fry) Wernick  ewernick@velaw.com
**Tel +**1.202.639.6730  **Fax +**1.202.879.8830

April 5, 2023

**Via ECF and Email (Failla_NYSDChambers@nysd.uscourts.gov)**

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Consumer Financial Protection Bureau, et al v. MoneyGram International, Inc., et al*, 22-cv-03256-KPF

Dear Judge Failla:

  Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc. (collectively "MoneyGram" or the "Company") respectfully oppose the letter-motion to lift the stay of this case, filed by the Consumer Financial Protection Bureau (the "CFPB") and the Office of the New York State Attorney General (collectively "Plaintiffs") (ECF No. 55, the "Motion").[1]  As was true when this Court granted the stay, "a potential Supreme Court decision may resolve or otherwise bear on important issues in this case," and judicial efficiency is best served by a stay, pending that resolution.  *See* ECF No. 52 at 6–8.  Contrary to Plaintiffs' argument, the Second Circuit panel decision in *Law Offices of Crystal Moroney, P.C.*, --- F.4th ---, 2023 WL 2604254 (2d Cir. Mar. 23, 2023) does not alter the plain fact that "CFPB rules and regulations are integral to nearly all of Plaintiffs' claims" and that this case "may dramatically change" depending on how the Supreme Court resolves the constitutional questions around the CFPB's funding and regulatory activities.  ECF No. 52 at 5.  Judicial economy continues to justify this Court's stay of the case.

  The same factors that justified the stay in December further support a stay today.  First, while Supreme Court review of the constitutional question was merely possible last December, the Supreme Court now has granted a writ of certiorari.  *Cf.* ECF No. 52 at 4 (noting Plaintiffs were, at the time, "correct that the Supreme Court may not grant certiorari").  Second, where the timeline for resolution was uncertain, there is now a briefing schedule before the Supreme Court, and any delay in this case is finite.  Third, efficiency, judicial economy, and the burden on MoneyGram all continue to outweigh any minor prejudice that a continued stay may cause the Plaintiffs.  As this Court recognized, it "would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision," even where that pending decision might not settle "every question of fact and law."  ECF No. 52 at 6 (quoting *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (internal

---

[1] Plaintiffs never contacted counsel for MoneyGram to ascertain the Company's position on their letter motion before filing.  MoneyGram's position is set forth in this letter opposition in response.

**Vinson & Elkins LLP   Attorneys at Law**                                                                 2200 Pennsylvania Avenue NW, Suite 500 West
Austin  Dallas  Dubai  Houston  London  Los Angeles  New York                Washington, DC 20037-1701
Richmond  Riyadh  San Francisco  Tokyo  Washington                                    **Tel** +1.202.639.6500  **Fax** +1.202.639.6604  velaw.com



citation and quotation omitted)); *see also Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017) (stay would "promote the interests of non-parties and the public to conserve judicial resources and promote judicial economy").

Indeed, the last time the Supreme Court resolved a major constitutional challenge to the CFPB, *see Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), numerous District Courts were forced to revisit previous holdings to conform to the new precedent. *See, e.g., CFPB v. RD Legal Funding, LLC*, 592 F. Supp. 3d 258, 260–61 (S.D.N.Y. 2022); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, No. CV 17-1323 (MN), 2021 WL 1169029, at *4 (D. Del. Mar. 26, 2021) (determining whether CFPB action was valid "at a time [before *Seila Law*] when [the CFPB's] structure violated the Constitution's separation of powers"). Preserving the stay will ensure the Court can adjudicate the pending motions only once. *See Gonzalez de Fuente*, 2020 WL 738150, at *4 (granting stay to avoid "issuing a ruling inconsistent with the Supreme Court's eventual ruling"). The need for Supreme Court clarity is also uniquely important in this case because the CFPB's naked forum shopping forced MoneyGram to move to transfer this case to the Northern District of Texas, within the Fifth Circuit, which places this case in the middle of the very circuit split that the Supreme Court will soon resolve. *See* Def's Mtn. to Transfer and Mtn to Dismiss, Dkt. No. 31, at 6–8, 13–15; *cf. Moroney*, 2023 WL 2604254, at *5–6 (disagreeing with Fifth Circuit holding in *CFSA v. CFPB*, 51 F.4th 616, 629 (5th Cir. 2022)). To avoid a scenario where a dispositive question hinges on a transfer motion and on the opposing precedents of separate circuits, this action should remain stayed pending the Supreme Court's resolution of the constitutional issue.

Plaintiffs' request to lift the stay is also premature. Plaintiffs overstate both the finality of the Second Circuit decision and the timeline of the Supreme Court's docket. The decision in *Moroney* will not be effective until the Second Circuit's mandate issues. *See U.S. v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991). In the meantime, the decision may still be subject to a petition for a rehearing *en banc*, *see* Fed. R. App. P. Rule 35(c), Rule 40(a)(1)(B), or the defendant may petition the Supreme Court for a writ of certiorari, *see* Sup. Ct. Rule 13. Moreover, there is no reason to expect that the Supreme Court would wait until the last day of the 2023 term before deciding the constitutional question. Given the timing of the Supreme Court's *certiorari* grant and expected argument date in fall 2023, the matter will be fully submitted relatively early in the Court's term, which could allow for a decision resolving the circuit split as early as this winter. While cases can remain on the Court's docket for decision until the term's end, it is unusual for cases argued early in the Court's term to be the last to issue.

Plaintiffs argue that the *Moroney* decision suggests there is "no reason to impede or delay litigation involving the Bureau in jurisdictions where *CFSA* has no binding force," but this interpretation lacks any citation to the opinion itself. *See* ECF No. 55 at 2. Unsurprisingly, nothing in the *Moroney* opinion supports that argument because, to the contrary, "[p]ostponing the final disposition of a case pending an upcoming decision by the United States Supreme Court" is still the "practice exercised by the Second Circuit in the interest of judicial economy." ECF No. 52 at 2 (citing *Jugmohan v. Zola*, No. 98 Civ. 1509, 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000)). The imminent review by the Supreme Court justifies a stay, and that review will then bind this Court whether or not there is controlling in-circuit precedent in the meantime. *See Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-RJA-JJM, 2016 WL 787963, at

*4 (W.D.N.Y. Mar. 1, 2016) (granting stay due to imminent Supreme Court action, even when existing Second Circuit precedent arguably controlled and resolved jurisdictional question).  The issuance of the *Moroney* decision does not change the calculus.

The temporary stay of this case has not caused prejudice or hardship to Plaintiffs, *see Sikhs for Just. v. Nath*, 893 F. Supp. 2d at 622, and the Motion makes no attempt to show that Plaintiffs have suffered or will suffer any prejudice if the Court declines to lift the stay.  By contrast, any minimal prejudice to Plaintiffs that potentially could be caused by a delay of mere months is outweighed by the very real burden on MoneyGram if forced to expend significant costs and resources to defend against an enforcement action that the Supreme Court later deems to be illegitimate.  *See Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (defendants would be "considerably burdened" by unnecessary "motion practice and discovery").

Finally, in a lengthy footnote, Plaintiffs argue that MoneyGram's "decision to expend resources" in a Freedom of Information Act ("FOIA") lawsuit regarding the CFPB's pre-filing maneuvering "belie[s] any claim that [MoneyGram] would be burdened by moving forward."  Motion at 3 n.3.  Plaintiffs' argument misrepresents MoneyGram's FOIA suit, which was triggered by inexplicable stonewalling by the CFPB, which failed to respond to a narrowly tailored FOIA request that has been pending for over one year.  Although not eager to "expend resources," MoneyGram had no choice but to litigate, especially because the stay on this docket does not apply to FOIA proceedings and because the CFPB's lack of transparency suggests that it may be hiding damaging evidence that would further undermine the legitimacy of its suit against the Company.[2]  In any event, the burden to MoneyGram in pursuing the FOIA litigation is minimal because the Company has asserted its right to recover its attorneys' fees as allowed under the FOIA statute.  *See* 5 U.S.C. § 552(a)(4)(E).

On balance, the interests of the parties, the Court, and the public continue to heavily favor a stay, and MoneyGram respectfully requests that this Court deny Plaintiffs' motion and continue the stay until the Supreme Court rules on the fundamental constitutional question at issue in *CFSA* and *Moroney*.

Respectfully Submitted,

 */s/ Ephraim Wernick*
Ephraim (Fry) Wernick
Tel: (202) 639-6730
Email: ewernick@velaw.com
*Attorney for Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.*

---

[2] Additionally, the CFPB has added undue delay and unnecessary expense in the FOIA proceeding by filing a motion to dismiss on an alleged procedural flaw, asserting that MoneyGram's counsel should be the named plaintiff rather than MoneyGram itself.  *See* Motion to Dismiss, *MoneyGram International, Inc. v CFPB*, 23-cv-00541 (RDM) (D.D.C. Apr. 3, 2023).  The CFPB should not blame MoneyGram for shouldering burdens the CFPB has created by its intransigent refusal to honor its obligations under FOIA.